IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA

FILED
**April 1, 2026**

ASHLEY N. DEEM, CHIEF DEPUTY CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

**HISEL BAILEY,**
**Plaintiff Below, Petitioner**

**v.) No. 25-ICA-286**    (Cir. Ct. Kanawha Cnty. Case No. CC-20-2022-C-145)

**MICHELLE WOOMER, TERI STONE,**
**and LEGAL AID OF WEST VIRGINIA, INC.**
**Defendants Below, Respondents**

## MEMORANDUM DECISION

Petitioner Hisel Bailey appeals the Circuit Court of Kanawha County's June 18, 2025, final order granting summary judgment to Respondents Michelle Woomer, Teri Stone, and Legal Aid of West Virginia, Inc. ("Legal Aid"), and dismissing the action, with prejudice. In addition, Mr. Bailey appeals the circuit court's November 19, 2024, order denying his motion for leave to file an amended complaint. Respondents filed a joint response.[1] Mr. Bailey filed a reply.

This Court has jurisdiction over this appeal pursuant to West Virginia Code § 51-11-4 (2024). After considering the parties' arguments, the record on appeal, and the applicable law, this Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's June 18, 2025, and November 19, 2024, orders is appropriate under Rule 21 of the West Virginia Rules of Appellate Procedure.

Mr. Bailey is a registered nurse who was employed by Mildred Mitchell-Bateman Hospital ("MMBH"), a psychiatric facility operated by the West Virginia Department of Health and Human Resources ("DHHR").[2] On January 7, 2019, Mr. Bailey and Krista Menchaca, a health services worker, were walking a group of MMBH patients to the cafeteria for dinner. Among them was M.C., a long-term patient of MMBH who had a history of defiant behavior and self-harm. On the way to the cafeteria, M.C. became

---

[1] Mr. Bailey is represented by Scott H. Kaminski, Esq. Respondents are represented by James C. Stebbins, Esq., and Mark J. McGhee, Esq.

[2] In 2024, DHHR was reorganized into three separate departments, and the West Virginia Department of Health Facilities ("DOHF") now runs MMBH. However, during the period relevant to this appeal, DHHR was the operating entity.

agitated, punched a wall, threatened to bite himself, and raised his arm toward his mouth. Mr. Bailey tried to keep M.C. from biting himself, a struggle ensued, and both men fell to the floor. Ms. Menchaca called for assistance, and four other MMBH employees arrived and gained control over M.C. Mr. Bailey then escorted M.C. back to his unit. MMBH staff examined M.C., found a small bump and cut over his eyebrow, and placed a bandage on the cut.

On January 11, 2019, Respondent Michelle Woomer, a patient advocate employed by Legal Aid, was making rounds at MMBH and observed bruising around M.C.'s eye. She asked M.C. about the bruise, and he explained that Mr. Bailey threw him to the floor and banged his head during the episode. Ms. Woomer conducted an initial investigation of the event, which included reviewing relevant nursing notes, a report by Mr. Bailey, and a security video of the incident. Respondent Teri Stone, also employed by Legal Aid, viewed the video footage, as well as MMBH employee Olivia Shields and MMBH CEO Craig Richards. Ms. Woomer then made a referral to Adult Protective Services ("APS"). Separately, MMBH Director of Nursing, Cheryl Williams, filed a patient grievance form on behalf of M.C. As a result of the patient grievance, Mr. Richards assigned Ms. Woomer and Ms. Shields to investigate the incident. On January 17, 2019, MMBH advised Mr. Bailey in writing that his employment was suspended, pending an official investigation of the January 7 incident. The patient grievance investigation consisted of Ms. Woomer and Ms. Shields viewing the security video and interviewing M.C. and Ms. Menchaca. Ms. Woomer's subsequent report concluded that the allegations of physical abuse against Mr. Bailey were substantiated.

On March 6, 2019, MMBH held a predetermination conference to advise Mr. Bailey of his contemplated dismissal and to provide him with an opportunity to be heard. Thereafter, Mr. Richards, who was not present at the conference, recommended that Mr. Bailey's employment be terminated. DHHR approved the recommendation and in a letter dated March 11, 2019, Mr. Richards advised Mr. Bailey that his employment with MMBH was terminated due to his physical abuse of a patient. Mr. Bailey then filed a grievance with the West Virginia Public Employees Grievance Board. On April 18, 2019, Mr. Bailey received notice that Ms. Shields had filed a complaint against him with the West Virginia Board of Nursing.[3]

Mr. Bailey proceeded through the grievance process to a level three hearing before an administrative law judge, held on June 10 and 17 of 2019. On November 19, 2019, the Grievance Board issued its decision that reinstated Mr. Bailey to his position at MMBH with back pay, interest, and restoration of all benefits. The Grievance Board also directed

---

[3] Mr. Bailey was notified by the Board of Nursing in April of 2021 that the complaint against his nursing license was dismissed with no action taken by the Board.

that the January 7 incident be removed from Mr. Bailey's personnel file. MMBH did not appeal the Grievance Board's final ruling.

Meanwhile, an anonymous tip was made to the West Virginia Attorney General's Medicaid Fraud Unit ("MFCU"), causing it to investigate the January 7 incident. Mr. Bailey was questioned on December 2, 2019, by MFCU employees Nathan Lyle and Erin Young, and David Holtzapfel, an attorney with the office of the West Virginia Attorney General. Mr. Lyle authored a report about the January 7 incident and referred the matter to the Cabell County Prosecuting Attorney. The prosecutor's office filed criminal charges against Mr. Bailey for misdemeanor assault, misdemeanor battery, and misdemeanor abuse or neglect of an incapacitated adult. A magistrate found probable cause to believe that Mr. Bailey had committed the offenses. As a result of the criminal charges, Mr. Bailey's employment with MMBH was suspended again. On March 2, 2021, the prosecuting attorney dismissed all charges against Mr. Bailey, without prejudice.[4]

On February 25, 2022, Mr. Bailey filed this action against respondents alleging claims for malicious prosecution.[5] Respondents moved to dismiss, asserting multiple immunity defenses and asserting that Mr. Bailey failed to state a claim upon which relief could be granted. That motion was denied, and discovery proceeded, including depositions of Ms. Woomer, Ms. Stone, APS investigator Janet Napier, and Mr. Lyle. On November 29, 2023, approximately twenty-one months after the action was filed, Mr. Bailey moved for leave to amend his complaint to add a claim against Legal Aid under theories of negligent training, supervision, and retention of Ms. Woomer. After briefing and a hearing, the circuit court entered its November 19, 2024, order denying the motion for leave to amend. The circuit court determined that Mr. Bailey's proposed negligence claim exceeded the SCAWV's mandate on remand and was thus futile.

On April 15, 2025, respondents filed a motion for summary judgment and Mr. Bailey responded. On June 18, 2025, the circuit court granted summary judgment to

---

[4]  The charges were dismissed without prejudice, but the circuit court found that the statute of limitations for the charges had since expired, which rendered the dismissal final.

[5]  DHHR, MMBH, Ms. Shields, Mr. Richards, MFCU, and Mr. Lyle were also named in the lawsuit. In a prior appeal in the same case, the Supreme Court of Appeals of West Virginia ("SCAWV") dismissed the malicious prosecution claims against MFCU and Mr. Lyle on qualified immunity grounds. *See State ex rel. W. Va. Attorney General, Medicaid Fraud Control Unit v. Ballard*, 249 W. Va. 304, 895 S.E.2d 159 (2023). On remand, the circuit court dismissed all claims against DHHR, MMBH, Ms. Shields, and Mr. Richards, leaving only Mr. Bailey's malicious prosecution claims against Legal Aid, Ms. Woomer, and Ms. Stone.

respondents and dismissed the matter, with prejudice. In its June 18, 2025, order the circuit court concluded: (1) that respondents did not procure any prosecutions; (2) the prosecutions did not lack probable cause; and (3) that there is no evidence of malice.[6] Mr. Bailey's appeal of the June 18, 2025, and November 19, 2024, orders followed.

The two orders on appeal are subject to different standards of review. We review the circuit court's June 18, 2025, order granting summary judgment under a de novo standard. *See* Syl. Pt. 1, *Painter v. Peavy*, 192 W. Va. 189, 451 S.E.2d 755 (1994) ("A circuit court's entry of summary judgment is reviewed *de novo*."). The circuit court's November 19, 2024, order denying Mr. Bailey's motion for leave to amend his complaint is reviewed for abuse of discretion. *See* Syl. Pt. 4, *Bowyer v. Wyckoff*, 238 W. Va. 446, 796 S.E.2d 233 (2017) (quoting Syl. Pt. 6, *Perdue v. S.J. Groves & Sons Co.*, 152 W. Va. 222, 161 S.E.2d 250 (1968)) ("refusing to grant leave to amend a pleading will not be regarded as reversible error in the absence of a showing of an abuse of the trial court's discretion"). With these standards in mind, we address the parties' arguments.

Mr. Bailey first contends that the circuit court erroneously granted summary judgment to respondents, arguing that genuine issues of material fact exist as to whether respondents "procured" the three prosecutions, whether probable cause supported the prosecutions, and whether the parties acted with malice.[7] Conversely, respondents argue that MMBH, APS, MFCU, the Board of Nursing, and the prosecuting attorney all conducted their own investigations and, applying their own standards, made independent determinations about whether to proceed. Further, respondents argue that Mr. Bailey fails to show lack of probable cause and fails to present any evidence of malice. We agree with respondents.

The elements of a malicious prosecution claim in West Virginia are as follows:

---

[6] In determining that Mr. Bailey failed to establish a prima facie malicious prosecution claim, the circuit court declined to reach respondents' various immunity defenses.

[7] Mr. Bailey further asserts that the circuit court failed to analyze all three prosecutions allegedly caused by respondents' conduct—termination of his employment; the complaint against his nursing license; and the criminal charges. Upon review, the record demonstrates that the circuit court's analysis of procurement, lack of probable cause, and malice with respect to the criminal charges are likewise applicable to the Board of Nursing complaint and to the employment action taken by MMBH. Thus, we find that any error by the circuit court in this regard is harmless error, and we decline to reverse the circuit court on that basis.

4

In an action for malicious prosecution, plaintiff must show: (1) that the prosecution was set on foot and conducted to its termination, resulting in plaintiff's discharge; (2) that it was caused or procured by defendant; (3) that it was without probable cause; and (4) that it was malicious. If plaintiff fails to prove any of these, he can not [sic] recover.

Syl. Pt. 1, *Goodwin v. City of Shepherdstown*, 241 W. Va. 416, 825 S.E.2d 363 (2019) (quoting Syl. Pt. 1, *Radochio v. Katzen*, 92 W. Va. 340, 114 S.E. 746 (1922)). Specifically, Mr. Bailey fails to show the elements of procurement, lack of probable cause, and malice.

First, respondents did not procure any of the three prosecutions in this case. Procurement requires active control over the initiation of the proceedings—merely submitting findings after an investigation is not enough. *See Norfolk S. Ry. Co. v. Higginbotham*, 228 W. Va. 522, 528, 721 S.E.2d 541, 547 (2011) (observing that procurement "requires more than just the submission of a case to a prosecutor; it requires that a defendant assert control over the pursuit of the prosecution."). Here, Ms. Woomer conducted a legally required investigation under West Virginia Code of State Rules § 64-59-20.2.5, reported her findings to APS, and took no further action. Respondents played no role in MMBH's employment decisions. In addition, Ms. Shields made the complaint to the Board of Nursing, not respondents, and MFCU's separate criminal investigation was initiated by an anonymous tip. The decision to refer the matter to the prosecutor and the decision to file criminal charges were made by MFCU and the prosecutor, respectively. Similarly, any decision by MMBH or the Board of Nursing was made independent of Ms. Woomer's reporting to APS.

Secondly, Mr. Bailey fails to establish lack of probable cause. A neutral Cabell County magistrate reviewed the evidence, including Mr. Bailey's admissions, the patient's visible injuries, and video footage. Based on that evidence, the magistrate independently found probable cause to issue an arrest warrant. That judicial finding creates a presumption of probable cause that Mr. Bailey has not rebutted with any evidence of fraud, bad faith, improper purpose, or the like. *See* Syl. Pt. 5, *Jarvis v. West Virginia State Police*, 227 W. Va. 472, 711 S.E.2d 542 (2010) (a grand jury indictment is prima facie evidence of probable cause for the underlying criminal prosecution, and a plaintiff may rebut this evidence by showing that the indictment was procured by fraud, perjury, or falsified evidence). The prosecutor's subsequent discretionary decision not to pursue those charges does not establish lack of probable cause here. Similarly, the administrative decisions of APS and the Board of Nursing to not pursue the claims do not establish a lack of probable cause.

To establish malice, Mr. Bailey must provide clear evidence that respondents acted with wrongful intent, improper motives, or intentional or reckless disregard for Mr. Bailey's rights. *See generally Preiser v. MacQueen*, 177 W. Va. 273, 275, 352 S.E.2d 22,

24 (1985); *Norfolk Southern Ry. Co. v. Higginbotham*, 228 W. Va. 522, 528, 721 S.E.2d 541, 547 (2011); *Truman v. Fidelity & Cas. Co.*, 146 W. Va. 707, 709, 123 S.E.2d 59, 62 (1961). Ms. Woomer's findings were based on her observations of M.C.'s visible injuries, review of a video recording of the incident, and a personal interview with M.C. Ms. Woomer reported those findings to APS. There is nothing in the record indicating Ms. Woomer did so for any reason other than to comply with her statutory reporting requirements. The circuit court determined that Mr. Bailey presented no evidence that Ms. Woomer engaged in misconduct, bad faith, or that she acted with an improper motive. We find no reason to disturb that determination on appeal.

For the foregoing reasons, we conclude that Mr. Bailey failed to establish a claim for malicious prosecution and the circuit court's June 18, 2025, order granting summary judgment in favor of respondents is affirmed.

In his second assignment of error, Mr. Bailey asserts that the circuit court abused its discretion by denying his Motion for Leave to Amend the Complaint to add a claim for negligent training, supervision, and retention. Respondents argue that Mr. Bailey's negligence claim was futile and untimely. Thus, the circuit court did not abuse its discretion in denying Mr. Bailey's motion for leave to amend his complaint. We agree.

Rule 15(a) of the West Virginia Rules of Civil Procedure provides the circuit court with discretionary authority to grant or deny leave to amend a complaint "when justice so requires." W. Va. R. C. P. 15(a) (1998). While Rule 15(a) is liberally construed, "[i]t is not an abuse of discretion to deny a motion to amend if the proposed amendment would be futile." *Johnson v. Pinson*, 244 W. Va. 405, 415, 854 S.E.2d 225, 235 (2020). The SCAWV has determined that a proposed amendment may be considered futile if it could not withstand a dispositive motion. *See id.* (finding that proposed amendment to complaint is futile if it "could not withstand a motion to dismiss"); *Pyles v. Mason Cnty. Fair, Inc.*, 239 W. Va. 882, 889, 806 S.E.2d 806, 813 (2017) (concluding that circuit court did not abuse its discretion in refusing plaintiff's motion to add county commission as a defendant because to do so would be a futile gesture given that commission would be immune from liability under either West Virginia Governmental Tort Claims and Insurance Reform Act or public duty doctrine).

It is well-settled that negligence claims in West Virginia are subject to a two-year limitations period. *See* W. Va. Code § 55-2-12(b) (1959). In this case, the subject incident occurred on January 7, 2019, Ms. Woomer issued her report on February 25, 2019, and Mr. Bailey's employment was terminated on March 11, 2019. Pursuant to § 55-2-12(b), the limitations period for Mr. Bailey's proposed negligence claims expired no later than March 11, 2021, but Mr. Bailey's motion for leave to amend with the proposed negligence claims was not filed until November 29, 2023. Therefore, the proposed negligence claims were filed well after the expiration of the applicable statute of limitations. Further, although Mr.

Bailey contends that the statute of limitations was tolled under the discovery rule, his proposed amended complaint alleged no newly discovered facts arising from the discovery process that would justify application of that rule. The record demonstrates that the discovery rule is inapplicable, and Mr. Bailey's claims were thus subject to dismissal through a dispositive motion. Accordingly, we find no reversible error in the circuit court's conclusion that the proposed amendment was futile.[8]

Accordingly, the circuit court's November 19, 2024, and June 18, 2025, orders are affirmed.

Affirmed.

**ISSUED:** April 1, 2026

**CONCURRED IN BY:**

Chief Judge Daniel W. Greear
Judge Charles O. Lorensen
Judge Stephen O. Callaghan, sitting by temporary assignment.

Judge S. Ryan White, voluntarily recused

---

[8] The circuit court did not rely on the applicable statute of limitations as a basis for concluding that the amendment was futile. However, an appellate court may affirm a correct decision based on any grounds supported by the record, "regardless of the ground, reason or theory asserted by the lower court as the basis for its judgment." *Humphries v. Detch*, 227 W. Va. 627, 635 n.10, 712 S.E.2d 795, 803 n.10 (2011); *PITA, LLC v. Segal*, 249 W. Va. 26, 40, 894 S.E.2d 379, 393 (2023).